# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CYNTHIA L. HUTTON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-17-1259-G |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Cynthia L. Hutton brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The Court has reviewed the administrative record (Doc. No. 12, hereinafter "R. _"),[1] and the arguments and authorities submitted by the parties. The Commissioner's decision is reversed and remanded for further proceedings consistent with this Opinion. A separate judgment will be entered.

### PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her DIB application on June 7, 2015, alleging disability beginning on January 6, 2015. R. 15, 289-96. The SSA denied her application initially and on reconsideration. R. 186-216, 219-23. At Plaintiff's request, an administrative law

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

judge ("ALJ") held a hearing on January 19, 2017, R. 152-80, after which the ALJ issued an unfavorable decision on June 1, 2017. R. 12-29. The SSA Appeals Council found no reason to review the ALJ's decision, R. 1-7, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

The ALJ followed the five-step sequential evaluation process in determing Plaintiff was not entitled to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability-onset date. R. 17. At step two, the ALJ determined that Plaintiff has the following severe impairments:

> obesity, degenerative disc disease status post surgical repair, left shoulder injury status post November 2016 surgical repair, obstructive sleep apnea, osteoarthritis, carpal tunnel syndrome status post surgical repair, and hypertension.

R. 17-18. The ALJ found the alleged fibromyalgia and stroke with memory loss are not medically determinable impairments and that Plaintiff's tinnitus and mental impairments are not severe. R. 17-19.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 19-20.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") during the relevant period, based on all her medically determinable impairments:

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to lift and carry ten pounds occasionally and less than ten pounds frequently. The claimant can sit for about six hours during an eight-hour workday and can stand and walk for at least two hours during

an eight-hour workday. The claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant can occasionally reach overhead. The claimant can frequently handle and finger.

R. 21.

Based on the hearing testimony of a vocational expert ("VE"), the ALJ determined at step four that Plaintiff can perform her past relevant work as a customer-service representative—a sedentary, semiskilled job with an SVP of 4. R. 28. Thus, the ALJ determined Plaintiff is not disabled within the meaning of the Social Security Act. R. 29; *see* 20 C.F.R. § 404.1520(a)(4)(iv), (f).

STANDARD OF REVIEW

This Court's judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," in determining whether the ALJ's decision is supported by substantial evidence. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). Though a reviewing court considers whether the Commissioner followed applicable rules of law in

weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

A.  *Plaintiff's Assignment of Error*

Plaintiff alleges that her pain from medically determinable impairments, and the side effects of medication she must take to control her pain, make it impossible for her to perform even sedentary work. She contends that the ALJ, in determining that Plaintiff's allegations of disabling pain are inconsistent with the medical evidence, erroneously applied the two-step process for analyzing subjective symptoms set forth in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). *See also* SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); *see also id.* at *1 (prescribing that the Ruling applies to SSA decisions issued on or after March 28, 2016).

B.  *The Two-Step Process for Evaluating Symptoms*

Social Security Ruling 16-3p prescribes that an ALJ will engage in a two-step analysis in evaluating a claimant's impairment-related symptoms. First, the ALJ must "consider whether there is an underlying medically determinable . . . impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); *see also id.* at *1 (prescribing that the Ruling applies to SSA decisions issued on or after March 28, 2016). To satisfy the first requirement, the SSA "do[es] not consider whether the *severity* of an individual's alleged symptoms is

supported by the objective medical evidence." SSR 16-3p, 2017 WL 5180304 at *3 (emphasis added).

Second, if such an impairment is established, the ALJ must "evaluate the intensity and persistence" of the claimant's symptoms "to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* at *3; *see also* 20 C.F.R. § 404.1529(c) (2016). At this second step, in addition to considering all the evidence to evaluate the effects of a claimant's symptoms, the ALJ should also consider the relevant factors set forth in 20 C.F.R. § 404.1529(c)(3). These factors include:

1. The claimant's daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2017 WL 5180304, at *7-8.

C. *The ALJ's Analysis of Plaintiff's Symptoms*

As part of the RFC determination, and relevant to step one of the *Luna* analysis, the ALJ found that "[Plaintiff's] medically determinable impairments could reasonably be expected to produce [Plaintiff's] above alleged symptoms[.]" R. 22. Plaintiff does not challenge this finding by the ALJ.

5

Relevant to the second step, the ALJ summarized Plaintiff's testimony describing the functional limitations resulting from her pain-producing impairments and side effects of medication:

> At the hearing, [Plaintiff] alleged she is unable to work primarily due to pain and the side effects of pain medication. She testified to a history of surgeries in her neck, shoulder, wrists, and feet, and alleged she has relied on a doctor prescribed wheelchair whenever she must move about out in public for the last four years. [Plaintiff] described neck pain radiating to her right shoulder and down her forearm into her wrist. She described pain with walking that feels as if she has a rock in her sock. [Plaintiff] described drowsiness as a side effect of pain medication, and reported she normally sleeps twelve hours in a 24-hour period, with her sleep interrupted about every three hours due to pain. In addition to this, [Plaintiff] testified she spends about eight hours a day lying down. She acknowledged that she is pain free on her medication which she reported as including OxyContin, Percocet, and Lyrica. [Plaintiff] testified that her family helps her with personal care, and that she is unable to lift her arms to wash her hair or complete other activities. She alleged a limited, but improving ability to hold onto items. [Plaintiff] further alleged that her family does not leave her at home alone because they are concerned that she is at risk of falling.

R. 21. The ALJ then found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record" and that Plaintiff's statements "have been found to affect [Plaintiff's] ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." R. 22.

Plaintiff challenges this second-step assessment of Plaintiff's symptoms, and the ALJ's related consideration of the medical evidence, as failing to comport with the requirements of Social Security Ruling 16-3p. *See* Pl.'s Br. at 3-15. The Court agrees. As outlined below, the ALJ's ultimate conclusion that Plaintiff's reported symptoms are

inconsistent with the medical record is not supported by substantial evidence and is, in fact, overwhelmed by evidence contrary to this conclusion.

The ALJ did offer a lengthy summary of the medical evidence. For example, the ALJ described the many surgeries Plaintiff had undergone on her neck, feet, and arms before her alleged onset date, resulting in the need for pain management. The ALJ noted Plaintiff had been on opioid pain medication since 2008 and that, in April 2009, Plaintiff underwent anterior discectomy and fusion ("ACDF") at C4-5. R. 22, 1055. The ALJ stated that after Plaintiff's surgery she "went back to her normal routine for a number of years." R. 22. But the medical record to which the ALJ cites actually states the radiculopathy—i.e., pinched nerves—of her right upper extremity returned after only eight months. R. 1040. A medical record generated by Dr. Michael H. Wright dated March 27, 2013, states that Plaintiff, as of that date, had had "multiple previous cervical spine surgeries including previous anterior cervical discectomy and fusions of the C4-5, C5-6 and C6-7 levels, along with revision of these surgeries." R. 529. The ALJ notes that the record describes her most recent surgery, as of that date, as "a hardware removal with revision ACDF of the C4-5 level with allograft bone grafting in December 2012." R. 22, 529. Because of delayed union, she underwent posterior instrumentation of C4-C6 with iliac bone graft on April 2, 2013. R. 22, 442, 527. As the ALJ noted, Plaintiff's medical provider released her to work six weeks later, but only for four hours per day. R. 22, 527.[2]

---

[2] The ALJ does not cite to any medical evidence authorizing Plaintiff to work more than four hours in a workday.

For further context, the evidence in the record and the ALJ's evaluation reflect as follows:

- On April 29, 2015, Plaintiff presented as a new patient to Dr. Robert Thomas in Birmingham, Alabama. He assessed Plaintiff with "Failed Laminectomy Syndrome," which he described as "a complex and difficult pain syndrome with multiple factors interacting to sustain the patient's pain complaint. Typically, these include mechanical and or psychological dysfunction." R. 698. The ALJ noted Dr. Thomas' diagnosis, R. 22.

- The ALJ also noted the results of an MRI from February 11, 2015, taken because of Plaintiff's reported right-sided neck pain radiating to the right arm. R. 520. The findings demonstrated significant right neural foraminal stenosis at C5-C6 from uncinate and facet spurring resulting in encroachment of the right C6 nerve, as well as significant bilateral neural foraminal stenosis at C3-C4 from uncovertebral disc osteophyte complexes resulting in likely encroachment of the exiting bilateral C4 nerves, with a small posterior osteophyte ridge mildly narrowing the central spinal canal. R. 520. The ALJ mentioned the results of this study, R. 22, but emphasized that the study "did not suggest failed union" from Plaintiff's previous cervical fusions.

- A nerve-conduction study done August 24, 2015, yielded abnormal results indicating bilateral neuropathies at the wrists, suggestive of mild carpal tunnel syndrome and some mild left ulnar sensory neuropathy, but no evidence of radiculopathy. R. 847.

- Another MRI study was undertaken in April 2016 after Plaintiff had broken her left arm and was reportedly experiencing left-sided neck pain with left upper extremity radiculopathy. R. 1063-64. The MRI results included the following description:

  > At C3/4, there is left facet arthropathy with bilateral uncovertebral hypertrophy. There is an annular disc bulge with posterior endplate spurring. There is effacement of the ventral and dorsal thecal sac with flattening of the spinal cord. There is moderate central canal narrowing measuring 7mm. There is moderate/severe right[,] with severe left[,] neuroforaminal narrowing. This could compromise the exiting C4 nerve roots, left greater than right. R. 1064.

In rejecting Plaintiff's allegations of disabling neck pain, the ALJ stated, "The evidence does not indicate cervical radiculopathy, and the claimant has not had further

8

neck surgeries since her last fusion in 2013." R. 22. The ALJ also focused upon the fact that the August 2015 study did not show motor radiculopathy of the upper extremities. R. 22. But only this single study indicated the absence of radiculopathy, and it was performed before Plaintiff broke her left arm. In March 2016, Plaintiff reported to Demille Madoux, MD, that she was experiencing "constant" and "increasing neck pain" going down "both arms," as well as "left arm pain due to her fractured shoulder," which was not "healing well." R. 1052-53. As to the possibility of additional neck surgery, the ALJ does not point to any evidence of a medical source suggesting that a sixth fusion surgery would alleviate Plaintiff's pain or of Plaintiff refusing to undergo further surgery. In fact, Plaintiff testified that Dr. Wright, one of Plaintiff's treating physicians, had told her that her neck "just wasn't able to support the fusion that had been done" and that her neck was never going to be the way it "used to be." R. 163. Thus, the record reflects medical evidence consistent with Plaintiff's testimony of the limiting effects of her neck pain and contradictory of reasons relied on by the ALJ to discount that testimony.

The ALJ correctly noted that "the claimant's treatment for cervical degenerative disc disease has focused on pain management." R. 22. To the extent this was a criticism, it is unsupported. After five failed surgical attempts to relieve Plaintiff's symptoms, pain management was plainly a reasonable approach. To manage her pain, Plaintiff was prescribed OxyContin, Percocet, Lidoderm patches, and Lyrica. R. 22. Plaintiff testified that while these medications helped control her pain, they also made her tired and unable to perform her former job as customer-service representative. R. 162. The ALJ pointed to nothing in the record that would suggest Plaintiff did not need the prescribed medications

9

to manage her pain. And there is no dispute that the type and amount of medication Plaintiff was taking could make her feel tired and sleepy. The ALJ, however, appears to have discounted Plaintiff's testimony of the limitations caused by these medications due to Plaintiff's failure to consistently report side effects to her treating sources. R. 25. But a focus in the providers' notes on the efficacy of the prescribed medications rather than their side effects is not unusual and is not sufficient by itself to discount Plaintiff's testimony.

Further, Plaintiff reported that she uses a prescribed wheelchair. R. 361, 382. In rejecting Plaintiff's claims of disabling pain and in omitting the use of an ambulatory aid from the RFC, the ALJ relies heavily on his conclusion that Plaintiff's use of a wheelchair is not medically necessary. R. 23-24. The ALJ states that while Plaintiff reasonably could have been "prescribed a wheelchair for short-term use following surgery, there is no evidence that this occurred." R. 23. The medical records demonstrate, however, a wheelchair was prescribed for Plaintiff and delivered to her on February 8, 2013. R. 183-84; *see also* SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996) (prescribing that an RFC should include the use of an assistive device if there is "medical documentation establishing the need" for the device and "describing the circumstances for which it is needed"); *Staples v. Astrue*, 329 F. App'x 189, 191-92 & n.1 (10th Cir. 2009). And, as noted by the ALJ, Plaintiff was observed using a wheelchair throughout 2015 and when attending her consultative examination in March 2016 and the administrative hearing in January 2017. R. 23.

In sum, the ALJ's consideration of the effects of Plaintiff's pain and other symptoms and his finding that her symptoms do not limit her ability to work do not comport with the

requirements of Social Security Ruling 16-3p, resulting in an RFC that is not supported by substantial evidence in the record. *See Poppa*, 569 F.3d at 1169, 1171. Consequently, reversal is required.

CONCLUSION

For the reasons outlined above, the decision of the Commissioner is REVERSED and the case REMANDED for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). A separate judgment shall be entered.

IT IS SO ORDERED this 28th day of August, 2019.

CHARLES B. GOODWIN
United States District Judge